UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ROGER L. LYLES,

        Plaintiff,                    Case No. 2:21-cv-255

v.                                      Honorable Janet T. Neff

CAROLYN PIERCE et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rules 18, 20, and 21 regarding joinder, the Court will dismiss without prejudice Defendants Willis Chapman, R. Buhl, and JPAY.

        With regard to the remaining Defendants, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Some of the events about which he complains occurred at that facility and the Thumb Correctional Facility (TCF) Lapeer, Lapeer County, Michigan. Plaintiff sues the following URF personnel: Dr. Carolyn Pierce; Registered Nurses Gerald Covert, Patricia Lamb, and Mary Doe; and Grievance Coordinator M. McLean. Plaintiff also sues the following TCF personnel: Warden Willis Chapman and Grievance Coordinator R. Buhl. Finally, Plaintiff sues MDOC vendor JPAY.[1]

With regard to the URF Defendants, Plaintiff alleges that they have been deliberately indifferent to Plaintiff's serious medical needs. Specifically, Plaintiff contends that Defendants have not treated his eye conditions—glaucoma and cataracts—to Plaintiff's satisfaction. Plaintiff describes a course of treatment, beginning when he arrived at URF during 2019 and continuing to date, where Defendants will provide glasses and eye drops to treat his glaucoma, but they will not offer him LASIK[2] or some other unidentified treatment that would actually improve Plaintiff's eyesight rather than simply staving off further deterioration.

Plaintiff attaches to his complaint administrative grievance documents from URF. (ECF No. 1-1, PageID.14–19.) In his grievance, he again makes clear that he is not satisfied with merely stopping disease progression, he wants to "improv[e] his vision so he can see better and

---

[1] This Court has described JPAY as "a privately held corrections-related service provider that contracts with various state department of corrections, jails, and private federal prisons to provide services such as money transfers, email, and video visitation." *Triggs v. Barnhardt*, No. 2:20-cv-8, 2021 WL 6550824, at *1 n.2 (W.D. Mich. Dec. 16, 2021).

[2] "LASIK is short for 'Laser-Assisted in Situ Keratomileusis.'" *Wallace v. McGlothan*, 606 F.3d 410, 414 n.1 (7th Cir. 2010).

hopefully without glasses if at all possible." (Grievance URF210307031263, ECF No. 1-1, PageID.14.)

Review of Plaintiff's URF grievance materials reveals that Plaintiff was offered the opportunity to see an offsite ophthalmologist to address his cataracts and glaucoma. But Plaintiff expected that the offsite ophthalmologist would only examine his eyes and proceed to use drops—rather than going forward with LASIK. For that reason, Plaintiff declined the opportunity.

Plaintiff's allegations and the grievance materials indicate that Defendant Pierce examined Plaintiff's eyes and treated his glaucoma at URF. It appears that Defendants Covert, Lamb, and McLean are named as defendants for their respective roles in responding to Plaintiff's grievances. Plaintiff does not suggest any other involvement. Finally, Plaintiff notes that Nurse Mary Doe, presumably a pseudonym, "perform[ed] plaintiff['s] annual medical check up." (Compl., ECF No. 1, PageID.5.) Plaintiff does not explain any connection between his annual medical checkup and the course of treatment for his eye conditions.

Plaintiff's claims against Defendants Chapman and Buhl are loosely related to Plaintiff's eye conditions. Plaintiff claims that the medical providers at TCF prescribed glasses for Plaintiff during 2012, but never informed Plaintiff that he had glaucoma and never treated that condition. Plaintiff did not learn that he suffered from glaucoma until he arrived at URF. Plaintiff contends that TCF personnel are responsible for the deterioration that occurred between 2012 and 2019.

Once Plaintiff learned of his condition he filed a grievance at TCF regarding TCF personnel's failure to properly treat his condition. The MDOC's administrative grievance procedure requires a grievant to attempt to resolve the issue informally prior to filing the grievance and there are time limits for filing grievances. MDOC Policy Directive 03.02.130 ¶ Q (eff. Mar.

18, 2019). Plaintiff's grievance indicated that the problem arose in 2012. But he did not file his grievance until 2019. The grievance also failed to disclose any informal attempt at resolution prior to filing. Because the grievance was so late and because Plaintiff failed to pursue informal resolution first, it was rejected, initially by Defendant Buhl, and eventually by Defendant Chapman. (Grievance TCF1912-594-28E, ECF No. 1-1, PageID.24, 28); MDOC Policy Directive 03.02.130 ¶ J. Plaintiff does not allege any involvement by Buhl or Chapman other than their respective roles in rejecting Plaintiff's grievance.

Finally, Plaintiff alleges that JPAY failed to deliver a "JPAY tablet" despite Plaintiff's attempts to order one since September of 2020.

Plaintiff seeks actual and punitive damages against each URF Defendant in the amount of $5,000,000.00; actual and punitive damages against each TCF Defendant in the amount of $4,000,000.00; and actual and punitive damages against JPAY in the amount of $35,000.00

## II.     Misjoinder

### A.     Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

4

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter

frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983

6

suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. If Plaintiff were permitted to proceed with misjoined claims, because Plaintiff has already accumulated three strikes, he would avoid the consequences of paying multiple full filing fees for separate actions. Courts are obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court will look to the first named Defendant and the earliest clear factual allegations involving that Defendant to determine which portions of the action should be considered related.[3] Plaintiff names Defendant Pierce as the first Defendant in the caption of the complaint and in the list of Defendants. Plaintiff's earliest factual allegations involving Defendant Pierce assert that she examined him at some time after he arrived at URF. It appears that Pierce was involved in treating Plaintiff thereafter. The other URF Defendants, with the exception of Defendant McLean were involved in Plaintiff's treatment as well—at least to the extent that they evaluated the propriety of Defendant Pierce's treatment of Plaintiff through the grievance process.

---

[3] The analysis of joinder must start somewhere. The first-named Defendant is referenced in the first factual allegations in the complaint. Therefore, by accepting the first-named Defendant and first factual allegations as the foundation for this joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

7

Defendant McLean was also involved in Plaintiff's grievance regarding the treatment of Plaintiff's eye conditions; however, McLean's involvement did not relate to the propriety of Plaintiff's treatment. It related only to the grievance process itself. Although the connection is a tenuous one, because Plaintiff's claim relates remotely to the treatment of Plaintiff's eye conditions at URF, the Court concludes that the relationship could support joinder of Plaintiff's claim against McLean.

There is no connection between the alleged failures to treat Plaintiff's eye conditions at URF and failure to diagnose Plaintiff's glaucoma seven years earlier at TCF. The connection is even more attenuated in that Plaintiff does not sue the persons who purportedly failed to properly diagnose him and treat him, but instead sues the persons who rejected his untimely grievance regarding that treatment. Moreover, it is clear that no question of law or fact is common to the two groups of Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B). Plaintiff's claims against Chapman and Buhl are wholly unrelated to Plaintiff's claims against the URF Defendants and are improperly joined here.

Likewise, there is no connection between JPAY's failure to deliver the tablet Plaintiff wanted to order and the alleged failures to treat Plaintiff's eye conditions at URF. Therefore, the JPAY claim is also improperly joined.

    **B.**    **Remedy**

Because the Court has concluded that Plaintiff has improperly joined multiple Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable

nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

9

Plaintiff alleges Defendants Chapman and Buhl engaged in misconduct no earlier than December 4, 2019, when Buhl rejected Plaintiff's TCF grievance. Plaintiff's allegations relating to JPAY arose no earlier than September of 2020, when Plaintiff indicates he tried to order a JPAY tablet. As to all of the misjoined claims, therefore, Plaintiff has sufficient time in his limitations period to file a new complaint or new complaints against any dismissed Defendants. Plaintiff will not suffer gratuitous harm if the improperly joined Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 to dismiss without prejudice the claims against Defendants Chapman, Buhl, and JPAY. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). If Plaintiff wishes to proceed with his claims against the dismissed Defendants, he shall do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[4]

### III.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[4] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that the URF Defendants violated his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care

would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d

868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

Plaintiff suffers from glaucoma, which "is a medical condition generally defined as increased internal pressure within the eye which causes nerve damage and leads to gradual loss of sight." *United States v. Campbell*, 845 F.2d 1374, 1376 (6th Cir. 1988). The Sixth Circuit has recognized that glaucoma is sufficiently serious to satisfy the objective component of a deliberate indifference claim. *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, at *2 (6th Cir. Sept. 10, 2020). The *Spann* court cited with approval the decision of the United States District Court for the Eastern District of Kentucky in *Washington v. Bennett-Baker*, No. 6:14-172-GFVT, 2015 WL 5768959 (E.D. Ky. Sept. 30, 2015), which held that "[i]n light of [the prisoner's] lengthy and established medical history of cataracts and glaucoma, there is little question that his medical conditions were "sufficiently serious" to implicate the Eighth Amendment." *Washington*, 2015 WL 5768959 at *4. The Court concludes that Plaintiff's glaucoma and cataracts satisfy the objective component of a deliberate indifference claim.

Plaintiff's allegations fall short, however, with respect to the subjective component. The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

13

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x

14

62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff has failed to allege facts that demonstrate the requisite deliberate indifference as to any of the remaining Defendants.

### A. Defendant M. McLean

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the

complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Plaintiff does not allege that Defendant McLean did anything, much less anything related to the treatment provided for Plaintiff's eye conditions. It does not appear that McLean is mentioned in the attachments to Plaintiff's complaint either. Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant McLean.

### B. Defendant Doe

Plaintiff's allegations against Doe are scant. He alleges that Doe performed Plaintiff's annual medical checkup. Plaintiff alleges no connection between Doe and the treatment provided to Plaintiff for his eye conditions and Doe is not mentioned in the attachments to Plaintiff's complaint. Plaintiff has not alleged facts that would support the inference that Doe was deliberately indifferent to Plaintiff's serious medical needs. Therefore, Plaintiff has failed to state an Eighth Amendment claim against Doe.

### C. Defendants Lamb and Covert

Plaintiff does not allege that Defendants Lamb or Covert provided treatment or failed to provide treatment. It appears that Plaintiff named Covert as a defendant because Covert responded to Plaintiff's grievance at the first step. (ECF No. 1-1, PageID.14–15.) That response simply noted that Plaintiff had refused the offered offsite visit and encouraged Plaintiff to send a request if he changed his mind. (*Id*., PageID.15.)

It appears that Plaintiff named Lamb as a defendant because Lamb responded to Plaintiff's grievance at the second step. (ECF No. 1-1, PageID.19.) Lamb's response echoed Covert's response. Lamb acknowledged that Plaintiff suffered from glaucoma and cataracts, described the treatment, noted that Plaintiff wanted LASIK, and explained that Plaintiff had been

16

offered a visit with an offsite ophthalmologist to explore other treatment options, but he had declined. (*Id.*)

Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

It is not impossible that a response to a grievance regarding denied medical treatment might, itself, be a denial of medical treatment. But Plaintiff's allegations do not support the inference that either Covert or Lamb engaged in any active unconstitutional behavior. Covert's and Lamb's responses to Plaintiff's grievance are entirely consistent with Plaintiff's record of the events. Covert and Lamb also noted that additional treatment might be appropriate if Plaintiff would agree to attend an offsite appointment with an ophthalmologist, but that Plaintiff had refused. Plaintiff has not alleged that nurses Covert or Lamb were responsible for setting the course of treatment for Plaintiff's glaucoma or cataracts or that they failed in that effort. Thus, Plaintiff has failed to allege that either Covert or Lamb was deliberately indifferent to Plaintiff's serious medical need. Plaintiff has failed to state an Eighth Amendment claim against them.

### D. Defendant Pierce

Plaintiff alleges that Defendant Pierce was deliberately indifferent to Plaintiff's serious medical needs because she refused to refer him for offsite LASIK surgery. Plaintiff's claim against Pierce is exactly the type of "difference in judgment" claim regarding appropriate medical treatment that is simply not enough to state a deliberate indifference claim. *Darrah*, 865 F.3d at 372; *Briggs*, 801 F. App'x at 959; *Mitchell*, 553 F. App'x at 605. Moreover, Defendant Pierce did not foreclose treatment options beyond the course of treatment that had been pursued—the

17

eyedrops. Pierce authorized an offsite visit with an ophthalmologist for a more thorough examination that might support other treatment options. Plaintiff refused to go, apparently because he was unwilling to move forward with a treatment option that did not include LASIK. Plaintiff does not allege that LASIK is a more effective treatment than the treatments that Defendant Pierce has pursued. It is simply a different treatment option. Plaintiff's allegations show nothing more than a disagreement between Plaintiff and Defendant Pierce over the proper course of treatment for Plaintiff's glaucoma and cataracts. The allegations do not suffice to show deliberate indifference on the part of Dr. Pierce. Accordingly, Plaintiff has failed to state an Eighth Amendment claim against her.

Although it is not material to the Court's conclusion that Plaintiff has failed to state a claim, it is noteworthy that LASIK is not recognized as a treatment for glaucoma or cataracts.[5] The United States Food & Drug Administration (FDA) approves lasers used for LASIK surgery. The FDA reports that LASIK is a treatment for the correction of refractive errors: myopia, hyperopia, and astigmatism. *See* https://www.fda.gov/medical-devices/lasik/what-lasik (visited Jan. 22, 2022). Not only is LASIK not an approved treatment for glaucoma or cataracts, the safety and effectiveness of LASIK as a treatment for refractive errors is not determined for patients with

---

[5] The Court might well be able to take judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court could take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b). Notwithstanding the Court's ability to take judicial notice of these facts under Rule 201, the information in the two paragraphs regarding LASIK and treatments for glaucoma and cataracts plays no role in the Court's decision. Instead, this information merely provides context and additional information to a prisoner who is incarcerated for life and has been in custody for most of the last 50 years. *C.f. United States v. Mathews*, 846 F. App'x 362, 364 n.3 (6th Cir. 2021) (Providing context when context matters is not misplaced.").

glaucoma or cataracts. *See* https://www.fda.gov/medical-devices/lasik/when-lasik-not-me (visited Jan. 22, 2022); https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/refractive-errors/surgery-refractive-errors (visited Jan. 22, 2022).

The National Eye Institute of the National Institutes of Health identifies three treatments for glaucoma: prescription eyedrops, laser treatment (but not LASIK), and surgery. *See* https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/glaucoma (visited Jan. 22, 2022). The treatments, however, do not meet the criterion Plaintiff has established. They do not "undo" existing damage to vision. At best, "it can stop it from getting worse." *Id*. Treatment for cataracts—typically surgery, but not LASIK—does offer the possibility for better vision. *See* https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/cataracts (visited Jan. 22, 2022).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  February 1, 2022             /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge